**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DAVID HUGHES**

**PLAINTIFF**

**VS.**             **CASE NO. 4:07CV00040 BD**

**MICHAEL J. ASTRUE,**
**Commissioner,**
**Social Security Administration[1]**             **DEFENDANT**


**<u>MEMORANDUM OPINION AND ORDER</u>**


Plaintiff David Hughes brings this action for review of a final decision of the

Commissioner of the Social Security Administration (the "Commissioner") denying him a

period of disability, Disability Insurance Benefits ("DIB"), Supplemental Security Income

("SSI") and Widower's Insurance Benefits ("WIB")[2] under Titles II and XVI of the

Social Security Act (the "Act").  For the reasons that follow, the decision of the

Administrative Law Judge[3] ("ALJ") is affirmed.

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on
February 12, 2007.  He is therefore substituted as the defendant pursuant to Fed.R.Civ.P.
25(d)(1).

[2]The Administrative Law Judge found that on Plaintiff's alleged onset date, he met
the insured status requirements to qualify for WIB under Title II of the Act.

[3]The Honorable Roy H. Leonard.

1

I.      **Procedural History**:

        Plaintiff protectively filed an application for DIB and SSI on October 28, 2002,

alleging disability due to left shoulder, arm, and hand pain; right shoulder pain; foot and

ankle pain; back pain; lumps in his breast; chronic obstructive pulmonary disease;

testicular pain; and depression.  (Tr. 13)  On November 12, 2002, Plaintiff applied for

WIB.  (Tr. 574-76)  Plaintiff alleges an onset date of August 29, 2002.  (Tr. 14, 101)

        The application was denied at the initial determination level and on

reconsideration. (Tr. 37-41)  The ALJ held a hearing on July 1, 2004, and the Plaintiff

appeared with his attorney.  (Tr. 695)  The ALJ issued a decision on October 13, 2004,

denying Plaintiff benefits.  (Tr. 13-28)  Plaintiff appealed the ALJ's decision, and the

Appeals Council denied Plaintiff's request for review.  (Tr. 5-7)  Plaintiff filed the current

Complaint (docket entry #2) on January 18, 2007.

II.     **Background**:

        Plaintiff was fifty-three years old at the time of the hearing (Tr. 700).  He had a

high school diploma and had completed three years of college.  (Tr. 700)  At the hearing,

Plaintiff testified to his past work experience as a receptionist, management project

analyst, maintenance control scheduler, customer service representative, research

assistant, and traffic signal technician.  (Tr. 701-02)

2

III.   **Findings of the ALJ**:

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i) (2005).  If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience.  *Id*. at §§ 404.1520(b); 416.920(b).  In this case, the ALJ found that Plaintiff was not engaged in substantial gainful employment and that he had not been so engaged since the onset of his alleged disability.  (Tr. 14)

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement.  *Id*. at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If not, benefits are denied.  *Id*.  A "severe" impairment significantly limits a claimant's ability to perform basic work activities.  *Id*. at §§ 404.1520(c); 416.920(c).  The ALJ found that Plaintiff had degenerative changes at multiple levels in the lumbar spine and in the right shoulder; he had impingement syndrome and arthritis in the right shoulder, along with right shoulder rotator cuff tendinitis; he had undergone surgery on his left shoulder for decompression; he had undergone surgery to remove one testicle; he had been identified with degenerative joint disease of his right first metatarsal phalange joint; hypertension; degenerative joint disease of his right first metatarsophalangeal joint; lumps in the nature of cysts in his breasts; chronic ankle instability bilaterally, and chronic neuritis in the lateral aspects of

3

both feet; chronic obstructive pulmonary disease; obesity; and depression. (Tr. 14)  The ALJ found that the lumps in the chest, the small mass, and the diagnosed mild chronic obstructive pulmonary disease were not severe impairments, but the remaining conditions, individually and in combination, constituted severe impairments.  (Tr. 14)

Step 3 involves a determination of whether the severe impairment meets or equals a listed impairment.  *Id*., §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If so, and the duration requirement is met, benefits are awarded.  *Id*.  If the claimant does not meet or equal a listing, then a residual functional capacity assessment is made.  *Id*., § 404.1520(a)(4) and § 416.920(a)(4).  This residual functional capacity assessment is used at Steps 4 and 5. *Id*.  In this case, the ALJ determined that the evidence did not establish that Plaintiff had an impairment alone or in combination that met or equaled a listed impairment. (Tr. 15) The ALJ's finding was based on a determination that Plaintiff's testimony regarding his various impairments was not entirely credible.  (Tr. 20)  Accordingly, the ALJ proceeded to make a functional capacity assessment.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity ("RFC") to perform past relevant work.  *Id*., §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If so, benefits are denied.  *Id*.  After a review of the Plaintiff's medical records, the ALJ determined that the Plaintiff has the ability to perform a full range of light work activity with the additional limitations as follows:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of
> objects weighing up to 20 pounds; standing and/or walking with normal

breaks for a total of about 6 hours in an 8-hour workday; and sitting with normal breaks for a total of about 6 hours in an 8-hour workday.  In addition, he would be limited from lifting above the shoulder with his [hand] or arm, or performing frequent finger or wrist movements with the left hand; and no lifting above the shoulder with the right hand.  Further based on reports of pain and medication, he should be limited to positions which only require him to understand, remember, and carry out simple instructions; he is limited in his ability to perform complex instructions; he has a fair ability to maintain attention, concentration, and pace, but should have rest periods every two hours; and he has a fair ability to accept instructions, respond appropriately to criticism, and set realistic goals.

(Tr. 25)

The ALJ specifically found that Plaintiff's alleged mental impairment did place some limits on his ability to perform a wide range of light work activity and took these limitations into account in his functional capacity evaluation.  (Tr. 23, 25)   The ALJ determined that Plaintiff could return to his past relevant work as a telemarketer, which is categorized as sedentary/semi-skilled, and as a customer service representative, which is categorized as sedentary/skilled.  (Tr. 26)

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given his age, education and work experience.  *Id.*, §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  Because the ALJ determined that Plaintiff could perform his past, relevant work, he did not engage in an analysis under Step 5.

IV.   **Legal Analysis:**

    A.   *Standard of Review*

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).  This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).  "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).  The ALJ's decision to deny benefits will not be disturbed so long as it falls within the "'zone of choice.'" *Id.* (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).  "An ALJ's decision is not outside the 'zone of choice' simply because [a reviewing court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.*

    B.   *Substantial Evidence to Support the ALJ's Decision*

In this case, the ALJ concluded at the third step that Plaintiff's impairments did not meet or equal an impairment in the listings. The ALJ went on to conclude at step four that Plaintiff's limitations did not preclude him from returning to past relevant work.  Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that at step three of his analysis, the ALJ should have found that the combination of Plaintiff's

impairments met or equaled a listed impairment.  *Id.*, §§ 404.1520(a)(4)(iii);

416.920(a)(4)(iii).  The ALJ's findings are supported by substantial evidence.

The burden of proof is on a plaintiff to establish that his or her impairment meets

or equals a listing.  See *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing

*Sullivan v. Zebley*, 493 U.S. 521, 530-31, 110 S.Ct. 885 (1990)).  To meet a listing, an

impairment must meet all of the listing's specified criteria.  *Id.*  "Medical equivalence

must be based on medical findings." *Id.* (citing 20 C.F.R. § 416.926(b) (2003); *Sullivan*,

493 U.S. at 531).  In this case, Plaintiff has pointed to several alleged impairments, but

has not specified a listed an impairment that the medical findings meet; nor has he

pointed to medical evidence to support a finding that his impairments are equal in severity

to all the criteria of a listed impairment.

Plaintiff argues that the ALJ "did not discuss" certain medical evidence.  However,

the fact that each element of the record is not discussed individually does not indicate that

the ALJ did not consider the totality of the record.  *Gooch*, 833 F.2d 589, 592 (6th Cir.

1987), *cert. denied*, 484 U.S. 1075 (1988).  In this case, the ALJ specifically stated that he

based his RFC decision on "the record, as a whole" and made his findings "[a]fter careful

consideration of the entire record."  This Court is not required to reverse the decision of

the ALJ because there is evidence in the record which the ALJ did not discuss or which

contradicts his findings.  The test is whether there is substantial evidence in the record as

a whole to support the ALJ's decision.  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir.

2002).

In his opinion, the ALJ discussed each of Plaintiff's alleged impairments including

problems with his back, shoulder, testicle, hand, wrist, breast, ankle, his mild chronic

obstructive pulmonary disease, and his depression.  (Tr. 14-23)  The ALJ concluded the

evidence did not establish that Plaintiff had an impairment alone or in combination that

met or equaled a listed  impairment.  (Tr. 15, 27)  A review of the evidence supports the

ALJ's conclusion.

C.     *Subjective Complaints of Pain*

Plaintiff contends the ALJ did not give sufficient weight to his subjective

complaints.  However, the ALJ acknowledged Plaintiff's subjective complaints and

considered these complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d

943 (8th Cir. 1984).  (Tr. 23-24)  The ALJ is in the best position to gauge the credibility

of testimony, and those credibility determinations are entitled to some deference.  *Estes*,

275 F.3d at 724.

In this case, the ALJ made express credibility findings and gave reasons for

discrediting the Plaintiff's testimony.  See e.g. *Shelton v. Chater*, 87 F.3d 992, 995 (8th

Cir. 1996).  The ALJ noted that Plaintiff's subjective complaints of pain were inconsistent

with the medical findings.

1.     Plaintiff's Complaints of Shoulder Pain

Plaintiff argues the ALJ relied solely on the records of Dr. Herbert Hahn from December 1991 to discredit Plaintiff's complaints of disabling back pain. This is not the case. While the ALJ did discuss Dr. Hahn's records, he also relied on subsequent medical records. (Tr. 15-17) Those records indicated that, in spite of Plaintiff's complaints of disabling shoulder pain, a radiologist interpreted x-rays of Plaintiff's shoulders in March, 2002 as "normal." (Tr. 356) In May, 2002, an EMG and nerve conduction study of Plaintiff's shoulders were normal. (Tr. 244) At an appointment in December of 2002, none of the physical findings suggested rheumatoid arthritis (Tr. 171), and the Plaintiff's neurological findings were normal. (Tr. 176)

In August, 2003, Plaintiff's treating physician observed:

> At this point, I think a great deal of his problem appears to be more . . . depression and worrying concern than anything else. At this point, he appears to have multiple somatic complaints with his feet, his hands, and his knees and his shoulder. He is adamant about having surgery and I have advised him that we are probably not going to attack surgically without better evidence of underlying pathology. At this point, I am going to put him on physical therapy.

(Tr. 124-25)

In September, 2003, Plaintiff showed progress after doing physical therapy exercises. (Tr. 564) Yet, in December 2003, Plaintiff had right shoulder surgery. (Tr. 521) Plaintiff's treating physician reported, postoperatively, that Plaintiff's shoulder was healing well (Tr. 503), and in January, 2004, Plaintiff's physical therapist reported that his

range of motion in the right shoulder matched or exceeded that in the left shoulder.  (Tr. 496)  Plaintiff had full motor strength, normal posture, and a stable gait.  (Tr. 489)  At the hearing, Plaintiff testified that "quite a bit" of his shoulder pain has been corrected by surgery and physical therapy.  (Tr. 725)  The medical evidence does not support Plaintiff's complaints of continuous, disabling, shoulder pain.

2.      Plaintiff's complaints of back pain

The ALJ considered Plaintiff's reports of back pain and also found these to be unsupported by the medical evidence.  (Tr. 18-19)  Although Plaintiff was diagnosed with mild, degenerative changes at multiple levels, x-rays of plaintiff's back on April 8, 2003, showed no fractures, no evidence of spoldylolysis, and normally maintained disc spaces. (Tr. 349)  MRIs of Plaintiff's back showed some mild stenosis and narrowing in the lumbar spine, but the neurological exam was non-focal and there were no findings suggesting myelopathy or radiculopathy.  (Tr. 459, 475, 541)

Finally, the ALJ found Plaintiff's complaints of lower back pain to be contrary to his activities.  On one occasion, Plaintiff reported for treatment of blisters on his lower lip after spending too much time in the sun while spending the day at the lake.  (Tr. 151)

3.      Plaintiff's foot and ankle pain

The ALJ also noted Plaintiff's complaints of constant foot and ankle pain but found that these complaints were not supported by the medical evidence.  (Tr. 17-18)  In the early 1990s, Plaintiff was diagnosed with chronic neuritis in both feet and ankle

10

instability.  (Tr. 394)  But the ankle instability and foot neuritis were corrected with

surgery and prescribed, high-top shoes which enabled him to return to work.  (Tr. 394)

X-rays of the right ankle in January, 2003, showed no significant bony abnormalities with

the exception of a small plantar calcaneal spur.  (Tr. 438)  In October, 2003, after the

Plaintiff received a new, prosthetic shoe, he reported doing better.  (Tr. 549)  On August

12, 2004, Plaintiff underwent a surgical procedure for  "exploration of the peroneal

tendon," and "a left Brostrom procedure for chronic left lateral ligament ankle

instability."  (Tr. 658)  With the exception of one post-operative visit where Plaintiff

reported some pain, Plaintiff's physician noted that Plaintiff was healing well, reported

only minimal pain, and was taking very few pain pills.  (Tr. 641, 651, 658)

      4.    Plaintiff's carpal tunnel syndrome

Plaintiff contends that on May 22, 2002, he was diagnosed with carpal tunnel

syndrome with pain that radiated to his thumb.  However, results of an NCS/EMG study

in May, 2002, indicate there was no "electrodiagnostic evidence" consistent with a

clinical diagnosis of carpal tunnel syndrome.  Plaintiff does not point to any medical

record in support of his allegation that he was diagnosed with carpal tunnel syndrome, but

the ALJ noted that on May 24, 2004, Plaintiff was diagnosed with mild carpal tunnel

syndrome.  Based on this minimal record, the ALJ appropriately discredited Plaintiff's

complaints of disabling pain from carpal tunnel syndrome.

5.      Plaintiff's other complaints

Plaintiff contends that he also suffers from a lump in his breast, testicular pain, and

COPD.  The ALJ appropriately found that these conditions were not severe impairments.

(Tr. 14)  The medical records indicate a mammogram performed in April, 2003, and a

May, 2003, biopsy showed a small soft tissue mass consistent with gynecomastia.  (Tr.

347-48)  The breast biopsy came back negative for malignant cells.  (Tr. 345-46)  In

August, 2003, a urologist saw Plaintiff due to his complaints of testicular pain.  (Tr. 127)

The Plaintiff received an injection and reported being pain free.  In spite of this, the

Plaintiff opted to undergo right orchiectomy in September, 2003.  (Tr. 558)  At a post-

operative visit, the Plaintiff reported only a very small amount of discomfort.  (Tr. 546)

Plaintiff expressed that he was pleased with the outcome of his surgery.  (Tr. 546)

Finally, an x-ray of Plaintiff's chest in August, 2003, revealed mild chronic obstructive

pulmonary disease.  (Tr. 329)  However, the mild COPD appears to be well-controlled

and no physician has imposed limitations on the Plaintiff due to this condition.  (Tr. 231)

6.      The combination of Plaintiff's impairments

Plaintiff argues that the ALJ did not consider these impairments in combination.

However, the record reflects otherwise.  In his opinion, the ALJ specifically stated that he

considered the entire record and concluded that "he lacks a physical impairment or

combination of impairments resulting in marked functional limitations." (Tr. 24, 27) See

*Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ properly considered combined

12

effects of plaintiff's impairments by noting he reviewed evidence as a whole and stating the "impairments" did not prevent him from performing his past relevant work).  "To require a more elaborate articulation of the ALJ's thought process would not be reasonable."  *Gooch*, 833 F.2d at 592.

       7.     Other credibility factors

      As part of his credibility analysis, the ALJ also noted the Plaintiff's failure to seek more frequent or substantive treatment of all of his alleged impairments.  Plaintiff contends that based on the 575 pages of medical documents contained in the record, the ALJ's argument that the Plaintiff failed to consistently seek treatment is misplaced. Although the record contains numerous pages of medical records, many of these are duplicates.  Additionally, as the ALJ appropriately pointed out, the records reflect many gaps in time during which Plaintiff alleged continuous pain but did not seek treatment for his various impairments.   For example, the records indicate gaps of six months and eight months in Plaintiff's seeking treatment of his shoulder; (Tr. 241, 170, 167, 572-73) gaps of six months and nine months in treatment for his back (Tr. 349, 679, 541, 667); and gaps of nine months and eight months in treatment of his foot and ankle. (Tr. 207, 549, 542, 681)  The ALJ is permitted to discount Plaintiff's complaints based on his failure to seek regular medical treatment.  *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996).

      Further, the ALJ noted that the record contains many statements indicating that when Plaintiff did seek treatment, he was not fully compliant with his treatment regimen.

13

(Tr. 131, 132, 179, 310, 466, 482, 491, 656 (noting "long history of difficulty with compliance")).   An ALJ may use failure to follow prescribed treatment to discredit subjective allegations.  *Brown v. Heckler*, 767 F.2d 451 (8th Cir. 1985).

In assessing the Plaintiff's credibility, the ALJ also pointed out that Plaintiff has commented to health care providers about the significance of prevailing on his disability claim.  On June 30, 2003, a therapist reported that Plaintiff is "in the process of applying for social security disability and is anticipating incapacitation due to upcoming surgery (which has not necessarily been recommended by a physician)."  On July 28, 2003, Plaintiff reported to a therapist that "'getting better' is a disadvantage for him — it would be more difficult to get disability."  (Tr. 129)  The therapist also reported that, "[h]e said that he is trying to improve but also cover himself with his disability application in case surgery is unsuccessful."  (Tr. 129)

In February, 2004, Plaintiff sought vocational counseling saying that "he wants to regain employment however cannot do any work at this time according to his attorney working on his SSD claim."  (Tr. 453)  Plaintiff gave the vocational rehabilitation intern the impression that "many of his physical symptoms are non-specific and he frequently changes his primary care physician."  (Tr. 454)  The intern reported that Plaintiff was "focused on his surgeries and results of his pending SSD claim."  (Tr. 454)   Finally, Plaintiff's treating clinical psychologist reported that Plaintiff stated several times during

a visit that her records were inconsistent and not helpful to his disability determination. (Tr. 642)

The ALJ also noted that Plaintiff's daily activities "are limited, according to his testimony, but they appear to be limited more on a self-imposed voluntary basis, than as a result of any functional restriction due to his impairments or imposed by his treating physicians." (Tr. 25)   At the hearing, Plaintiff reported living alone (Tr. 718), being able to drive (Tr. 721 ), go to the store (Tr. 715), carry up to three bags of groceries (Tr. 715), use his computer (Tr. 723) and, on a good day, spend a couple of hours in the yard. (Tr. 715)  Plaintiff also testified that he doesn't clean but indicated it was because he doesn't care, not because he is physically incapable. (Tr. 714)

Assessing Plaintiff's work history, the ALJ noted that Plaintiff had worked in many positions in a variety of fields over the years and that he had "left one or more positions due to being removed for cause." (Tr. 24)  Plaintiff told treating medical personnel that he was fired from "several jobs" due to sexual harassment charges against him, although he denied wrongdoing. (Tr. 148)   Plaintiff reported to a vocational counselor that he was fired from one position after six months because his "supervisor did not like anyone." (Tr. 483)  He also told the vocational counselor that he was terminated from two positions for trying to start a union. (Tr. 484)  At times, Plaintiff reported that he wanted to find a job but could not find anything "suitable that is not too physically demanding." (Tr. 160)

After considering all of these factors, the ALJ concluded that Plaintiff's testimony was not credible.  (Tr. 24)  The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his limitations.  *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007) (citing *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir.2003)).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [courts] will normally defer to the ALJ's credibility determination." *Id*. (citations omitted).  Here, the ALJ points to substantial evidence in the record supporting his decision to discount the Plaintiff's subjective allegations, and the Court will defer to his credibility finding.

      D.    *Testimony of Treating Physician*s

Plaintiff contends that the ALJ inappropriately rejected the testimony of Plaintiff's treating physicians.  More specifically, the Plaintiff argues that the ALJ should not have discredited the testimony of Plaintiff's treating psychologist, Grace Aikman, Ph.D. and should not have relied on the records of Herbert Hahn, M.D., who treated Plaintiff in the early 1990s for upper extremity problems.

The ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole.  *Estes*, 275 F.3d at 725 (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218-19 (8th Cir. 2001)).  It is the ALJ's function to resolve conflicts among "the various treating and examining physicians."  *Id*. (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

The ALJ noted that Plaintiff suffers from depression and assessed Plaintiff's depression according to the guidelines set forth in 20 CFR § 404.1520a.  The ALJ concluded:

> There is nothing in the evidentiary record or testimony which indicates that the claimant's mental impairment would significantly or adversely affect his ability to perform basic work-related activities.  Accordingly, I find that he has a severe, but non-disabling mental impairment.  This remains true, even when considered in combination with any remaining physical impairments. *Johnson v. Secretary*, 872 F.2d 810 (8th Cir. 1989).  Furthermore, I specifically find that his mental impairment does [place] some limits on his ability to perform a wide range of light work activity, as reflected in the residual functional capacity determination (SSR 96-8p).

(Tr. 23)

In coming to this conclusion, the ALJ rejected the opinion of Plaintiff's treating psychologist, Dr. Aikman, in favor of the opinions of state-agency psychologists.  As the ALJ correctly pointed out, the opinions of treating sources are given controlling weight if the opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(d) and 416.927(d).

Dr. Aikman completed a Mental Residual Functional Capacity Questionnaire ("Questionnaire") on June 21, 2004.  In the Questionnaire, Dr. Aikman opined that Plaintiff has no useful ability to function at a consistent pace, is unlikely to be able to maintain regular work attendance, would be absent from work due to his impairments an

average of four days per month, and has impairments expected to last at least twelve

months. (Tr. 398-401)

The ALJ concluded that Dr. Aikman's opinion as to Plaintiff's RFC did not

deserve controlling weight because her opinion was inconsistent with the record as a

whole. See *Krogmeir v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (holding that

treating physician's opinion is not entitled to substantial weight unless it is well-supported

by medically acceptable clinical and laboratory diagnostic techniques, and consistent with

other substantial evidence). The ALJ pointed out several ways that Dr. Aikman's opinion

was inconsistent with the record as a whole. For example, the ALJ noted that, despite

repeated notations indicating that Plaintiff failed to take his medication and was not

compliant with treatment (Tr. 131, 132, 179, 310, 466, 482, 491, 656), Dr. Aikman

reported in the Questionnaire that Plaintiff had "[g]ood treatment compliance." Further,

the ALJ noted that in the Questionnaire Dr. Aikman reported that there was little change

in his condition over the past year. (Tr. 398) However, the ALJ found this statement to

be in direct conflict with Dr. Aikman's report of May 12, 2004, just a month earlier,

noting that Plaintiff had made progress in coping with health issues, improving

relationship function, and was benefitting from both individual and group therapy. (Tr.

468) Additionally, there is evidence in the record that Plaintiff's mental symptoms could

be controlled with medication when Plaintiff is compliant with his treatment. (Tr. 480)

18

Based on these contradictions, the ALJ appropriately relied on the psychiatric review technique form and mental residual functional capacity assessment completed by the state-agency psychologist.  (Tr. 364-381)  The mental RFC assessment found Plaintiff moderately limited in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal work-day and work week at a consistent pace without interruption; and (5) set realistic goals or make plans independently.  The ALJ accounted for Plaintiff's limitations noted in the RFC.  (Tr. 27)

In December, 1991, Dr. Hahn assessed Plaintiff's RFC and found that, given Plaintiff's "permanent physical impairments with relation to his neck and upper extremities" which had reached maximum healing, Plaintiff could perform sedentary and light work.  Plaintiff argues that the ALJ should not have relied on Dr. Hahn's assessment when determining Plaintiff's RFC.  However, the ALJ did not rely solely on Dr. Hahn's records to determine the Plaintiff's RFC but also relied on Plaintiff's testimony, his activities of daily living, and medical records from January and February, 2004 (Tr. 488-89, 495).  The ALJ also noted that no treating or examining physician for the claimant's shoulder, arm, leg, back, breast, or testicular problems, other than Dr. Hahn, has restricted the Plaintiff's ability to work.  The ALJ did not err by considering Dr. Hahn's records along with other evidence in the record when determining the Plaintiff's RFC to perform his past, relevant work.

E.     *The ALJ's failure to develop the record*

Finally, Plaintiff claims that because he established that he suffered from impairments that prevented him from performing his past relevant work, the ALJ should have assessed his RFC to perform other work.  This argument is based on a false assumption.  As set forth above, the record supports the ALJ's conclusion that Plaintiff did not meet his burden of establishing impairments that prevent him from performing his past relevant work.  Accordingly, the ALJ was not required to assess the Plaintiff's ability to perform other work.

## V.     <u>Conclusion</u>:

The Court has reviewed all of the evidence in the record, including the medical evidence, the completed Psychiatric Review Technique Forms (Tr. 364-381), the agency physicians' RFC forms, and the hearing transcript.  There is substantial evidence in the record as a whole to support the ALJ's conclusion that Plaintiff's impairments, whether alone or in combination, do not meet or equal a listed impairment and that Plaintiff retained the RFC to perform his past relevant work.  Although Plaintiff offered evidence to the contrary; what evidence to believe and what weight to give it is the prerogative of the fact-finder, within broad limits. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the

case, this 3rd day of March, 2008.

_____

UNITED STATES MAGISTRATE JUDGE